607 F.2d 258
 6 Bankr.Ct.Dec. 171, Bankr. L. Rep. P 67,310
 In the Matter of The BOHACK CORPORATION, Debtor-in-Possession,
SHAW & LEVINE and The Bohack Corporation, Appellees,
v.
GULF & WESTERN INDUSTRIES, INC., Charles G. Bluhdorn, Don F.
Gaston, Martin Davis, Lawrence Levinson, Simpson,
Thacher & Bartlett and Nicholas Salgo,
Appellants.
 No. 190, Docket 79-5023.
 United States Court of Appeals,
Second Circuit.
 Argued Oct. 18, 1979.
Decided Dec. 5, 1979.
 
 J. Stanley Shaw, Garden City N.Y. (Shaw & Levine, Garden City, N. Y., Jesse I. Levine, William M. Rifkin, Garden City, N. Y., of counsel), for appellees.
 Arthur L. Liman, New York City (Paul, Weiss, Rifkind, Wharton & Garrison, Max Gitter, David Elkind, Robert Abrahams, New York City, of counsel), for appellants Gulf & Western Industries, Inc., Charles G. Bluhdorn, Don F. Gaston, Martin Davis and Lawrence Levinson.
 Arnold Bauman, New York City (Shearman & Sterling, John T. Klug, New York City, of counsel), for Appellant Simpson, Thacher & Bartlett.
 Michael Sullivan, New York City (Moore, Berson, Lifflander & Mewhinney, Earle K. Moore, New York City, of counsel), for appellant Nicholas Salgo.
 Harvey Goldstein, Finkel, Goldstein & Berzow, New York City, for Official Creditors Committee.
 Otterbourg, Steindler, Houston & Rosen, New York City (Conrad B. Duberstein, New York City, of counsel), for Official Creditors Committee.
 Before LUMBARD, SMITH and MULLIGAN, Circuit Judges.
 MULLIGAN, Circuit Judge:
 
 
 1
 This is an appeal from an April 6, 1979 order of the United States District Court for the Eastern District of New York, Chief Judge Jacob Mishler. That order reversed two orders of the Bankruptcy Court, Parente, J., dated May 23, 1978 and October 27, 1978, which had revoked the authority of the appellee, the law firm of Shaw & Levine, to act as special counsel to the Bohack Corporation (Bohack), a debtor-in-possession under Chapter XI of the Bankruptcy Act, 11 U.S.C. §§ 701-799 (1976), to prosecute an action in the New York Supreme Court, Queens County (The Bohack Corporation v. Gulf & Western Industries, Inc., et al., Index No. 159 52/77). Most of the appellants here are the defendants in the pending state action.[1] The order of the district court is hereby reversed.
 
 
 2
 * On July 30, 1974 Bohack filed a petition for an arrangement under Chapter XI in the District Court for the Eastern District of New York. Bohack was a supermarket chain which at the time had inventory discrepancies and losses totaling some $22 million of its $32 million book inventory, massive delinquent obligations to its suppliers, as well as large unpaid tax obligations. On September 20, 1974, on the application of Franklin E. Knobel, Bohack's Chairman, and the affidavit of J. Stanley Shaw, a partner in Shaw & Levine, Bankruptcy Judge Parente authorized the debtor to retain Shaw & Levine as special counsel. J. Stanley Shaw's affidavit represented that he had previously acted as counsel for Bohack in numerous proceedings and pending lawsuits. A list of these matters was appended to his affidavit. The Knobel affidavit set forth Inter alia the deponent's belief that Shaw's retention would be in the best interests of the estate and creditors by reason of his experience in the debtor's affairs.
 
 
 3
 On February 24, 1977 Judge Parente modified his order of September 20, 1974 and authorized Shaw & Levine to "investigate, and, if appropriate," prosecute an action against Gulf & Western Industries, Charles Bluhdorn "and such other defendants as may be appropriate" for damages caused to Bohack as a result of the Gulf & Western tender for stock of the Great Atlantic & Pacific Tea Company (A&P). The affidavit of Knobel attached to the application for this modification recited that Shaw had conducted an extensive investigation into the overstatement of inventories of the debtor. That inquiry disclosed that events surrounding Gulf & Western's tender for A&P stock possibly caused a severe curtailment of Bohack's credit lines with merchandise suppliers, which placed Bohack in an extremely precarious financial position. Further investigation revealed that Charles G. Bluhdorn, Chairman of Gulf & Western and the major stockholder of Bohack, may have used his position to facilitate the takeover in a way that contributed substantially to Bohack's collapse. According to the Knobel affidavit, there was a "conceivable concerted plan, orchestrated by Bluhdorn to take over A&P which resulted in the detriment of Bohack's stockholders." On the basis of the modified order Shaw & Levine commenced the state court action on November 18, 1977, seeking damages of $86 million against Gulf & Western, Bluhdorn, and the appellants whom we have described in footnote 1.
 
 
 4
 On December 12, 1977 the appellants moved the Bankruptcy Court to reconsider its previous orders appointing the firm of Shaw & Levine as special counsel to Bohack on the ground, Inter alia, that a conflict of interest between Shaw and Bohack precluded the firm from representing the debtor-in-possession in any matter before the Bankruptcy Court. Judge Parente's opinion dated May 2, 1978 rejected the appellants' motion insofar as it sought revocation of the September 1974 order initially approving the appointment of Shaw & Levine as special counsel.[2] However, the court did grant the appellants' motion in part Judge Parente modified the February 24, 1977 order by revoking the authority of Shaw & Levine to represent Bohack in the state court action. The bankruptcy judge found it inconceivable that Bluhdorn could manipulate the Bohack board without the knowledge of its Chairman Franklin E. Knobel, who was not named as a defendant and who was also a close personal friend and business associate of Shaw. Accordingly, the bankruptcy judge directed the creditors' committee to recommend replacement counsel subject to review and approval of the court. The propriety of the reversal of that part of the order by Chief Judge Mishler is the sole issue on this appeal.
 
 II
 
 5
 A threshold question is presented by the appellees' motion to dismiss this appeal as interlocutory. Section 24(a) of the Bankruptcy Act, 11 U.S.C. § 47(a), vests the Courts of Appeals with jurisdiction to hear appeals from either final or interlocutory orders in "proceedings in bankruptcy," but if the order involves "controversies arising in proceedings in bankruptcy" it is appealable only if it is final within 28 U.S.C. § 1291 or is otherwise independently appealable. Lesser v. Migden, 328 F.2d 47, 48 (2d Cir. 1964); Hillcrest Lumber Co. v. Terminal Factors, 281 F.2d 323, 325 (2d Cir. 1962).[3] The distinction between a proceeding in bankruptcy and a controversy arising in a proceeding in bankruptcy is one which even Judge Friendly has found "obscure and indefensibly confusing." Chemical Bank v. Slaner, 591 F.2d 139, 144 (2d Cir. 1978). However we need not enter that thicket since we have held that orders granting or denying attorney disqualification motions, if shown to taint the underlying trial, are directly appealable. W. T. Grant Co. v. Haines, 531 F.2d 671, 678 (2d Cir. 1976); Silver Chrysler Plymouth, Inc. v. Chrysler Motors Corp., 496 F.2d 800 (2d Cir. 1974) (en banc). Appellee argues that any taint here involves a state court trial from which no appeal to this court will lie. The argument is self-defeating. If the bankruptcy judge's order is beyond ultimate appellate review here, that is all the more reason to consider it a final disposition appealable under section 24(a) of the Bankruptcy Act. Aside from this, Shaw & Levine was not simply appointed by the client/debtor-in-possession but was in effect appointed by the Bankruptcy Court as well. If as found here, a conflict of interest has emerged, then not only is the state court action tainted but the supervisory power of the Bankruptcy Court which authorized the action "if appropriate" is compromised. The resolution of this issue is therefore necessary at this juncture. The order in our view is clearly appealable.
 
 
 6
 Appellees raise the related argument that the appellants have no standing to raise the disqualification question since their interests are not adversely affected by the state court litigation. At first blush this position has some plausibility. If the question were simply whether state court defendants might properly bring an action in a federal court to disqualify counsel for plaintiff in the state court action because he has failed to join as a co-defendant someone whom the defendants consider to be an indispensable or necessary party, there would be little difficulty in rendering an answer in the negative. But the question posed as appellees would have it does not raise the issue actually before the bankruptcy judge. Counsel for the plaintiff in the state court action was not simply nominated by the debtor but was confirmed by order of the Bankruptcy Court which authorized the state action if appropriate. The interest of the Bankruptcy Court does not terminate with the approval of counsel its supervision over the debtor's estate continues until the termination of the bankruptcy proceedings. That court has the inherent jurisdiction to reconsider its own orders. Feldman v. Trans-East Air, Inc., 497 F.2d 352, 355 (2d Cir. 1974). As Chief Judge Mishler pointed out, "(i)n the face of serious charges of improper conduct, the bankruptcy court had the obligation to inquire, Sua sponte, into the propriety of Shaw & Levine continuing in the role of special counsel."
 
 
 7
 In any event, several appellants do have standing. As the bankruptcy judge noted, Gulf & Western Industries, Charles G. Bluhdorn, and Don F. Gaston are listed as creditors in Schedule A-3 filed by the debtor-in-possession. They allege that their pecuniary interests will suffer through the depletion of estate assets in the form of fees paid for the continued retention of Shaw & Levine as special counsel. Loss of assets is certainly an adverse effect upon the interests of creditors, and is unquestionably related to the bankruptcy proceeding. See Ceramco, Inc. v. Lee Pharmaceuticals, 510 F.2d 268, 271 (2d Cir. 1975). The fact that the creditors' committee opposes replacement of Shaw & Levine and even appeared on this appeal to urge that point cannot constitute a waiver of the rights of these individual creditors.[4] We conclude therefore that the order before us is appealable and that the standing argument raised by appellees is groundless. Accordingly, we come to the merits of the appeal.
 
 III
 
 8
 The bankruptcy judge bottomed his removal of Shaw & Levine as special counsel in the Queens County action upon an analysis of the charges in the complaint. The gravamen of the state action is that the appellants engaged in a conspiracy to acquire control of A&P with the concomitant purpose and ultimate effect of accomplishing Bohack's financial demise. In essence the complaint charges that Bluhdorn manipulated the Bohack board of directors so that Bohack would become in effect a subsidiary of Gulf & Western and Bohack's management would replace A&P's managerial personnel. Joseph Binder, then Bohack's president, was further allegedly induced by Bluhdorn to attack A&P's marketing and pricing policies thus causing A&P, a large retail food chain, to retaliate by influencing Bohack's suppliers to tighten its credit lines. Moreover the complaint alleges that the defendants in the state court action compelled Bohack to issue convertible debentures for the purpose of calling in outstanding shares. The defendants' alleged intention in so doing was to take Bohack private, "thus hopefully escaping the scrutiny of the appropriate regulatory agencies with respect to conflicts and irregularities under the applicable securities and antimonopoly statutes of the Federal and State governments." Appellants urge that the charges in the Queens County action are frivolous, scandalous, illogical, and inconsistent. They may well be. But it is not our function to decide the merits of the state court action. Our concern is whether the Shaw firm was the proper counsel to undertake the investigation of the alleged conspiracy and to decide whether litigation was justified. We are fully persuaded that the answer to that question is in the negative. This conclusion is almost compelled by an examination of the complaint. It alleges a manipulation of the Bohack board of directors, the chairman of which was at all relevant times Franklin E. Knobel. Yet he was not named as a defendant. In fact he verified the complaint. This rather glaring omission becomes suspect upon inquiry into Shaw's relationship with Bohack. Shaw and Knobel are admittedly close personal friends and business associates. Shaw represented Bohack prior to the filing of the Chapter XI petition, and is now special counsel to the debtor-in-possession. Pursuant to orders of the Bankruptcy Court, Shaw has taken over the management of a major real estate facility of Bohack, and has become a substantial secured creditor of the debtor. Finally, Shaw has been a director and assistant secretary of Bohack since late 1975. He and Knobel are the only remaining officers of the debtor. Even Shaw's law firm concedes that his personal ties with Knobel and financial stake in Bohack are "unusual."
 
 
 9
 Shaw nevertheless takes the position that in his professional judgment Knobel is not a proper party defendant and was innocent of any wrongdoing. That again may well be. The point, however, is that such a determination must be made by the counsel who is in a position to make an independent judgment. As the foregoing summary of Shaw's entanglement with Bohack and Knobel amply demonstrates, Shaw is obviously in no such position. The best interests of the debtor will undoubtedly be jeopardized unless impartial counsel makes the determination whether Knobel's involvement in the Machiavellian plot alleged in the complaint was innocent or sinister.
 
 
 10
 Shaw argues that at least an evidentiary hearing should have been held in order to determine whether any conflict exists. We cannot agree. The close relationship between Knobel and Shaw is admitted, and, as Judge Parente found, it is inconceivable that Knobel as chairman of Bohack's board could be unaware of the alleged conspiracy. The manipulation of his own board, the utilization of Bohack's president to attack A&P thus inviting the alleged retaliation, the proposed stripping of Bohack management personnel to replace A&P's, the substitution of bondholders for stockholders to avoid regulatory scrutiny all alleged by Shaw and verified by Knobel in the complaint could not possibly have taken place without Knobel's knowledge. Each asserted misdeed necessarily involved the issue of his participation. Given the failure to include Knobel as a defendant in the face of these charges as well as Shaw's intimate relation with both the chairman and the corporation, the Bankruptcy Court had ample evidentiary grounds upon which to base its finding of a conflict. Moreover, it is the potential manifestation of the conflict with which we are here concerned. As Judge Friendly noted in In re Ira Haupt & Co., 361 F.2d 164, 168 (2d Cir. 1966), "(t)he conduct of bankruptcy proceedings not only should be right but must seem right."
 
 
 11
 Although reversing the Bankruptcy Court, Chief Judge Mishler did not dispute the existence of the conflict of interest which emerges from the facts we have related. He instead relied primarily upon two opinions of this court Ceramco v. Lee Pharmaceuticals and W. T. Grant Co. v. Haines, supra which stand for the general proposition that disqualification of counsel is not an automatically appropriate sanction where professional misconduct is found to exist. We have indeed been loathe to separate a client from his chosen attorney where the alleged misconduct does not prejudice an opposing party and taint the litigation in which he is appearing. The delay and additional expense created by substitution of counsel is a factor to which we have attached considerable significance in these cases. See, e. g., Lefrak v. Arabian American Oil Co., 527 F.2d 1136, 1138-40 (2d Cir. 1975).
 
 
 12
 However the disqualification here does involve a conflict of interest which goes to the core of the pending state action and which prejudices the defendants since it was authorized by the Bankruptcy Court only if appropriate. The conflict found by the Bankruptcy Court affects not merely a determination of the proper defendants in the action but whether it should have been commenced in the first place. Moreover, counsel here was not simply the choice of the client but was confirmed by the court. As such he is answerable not only to his client but to the Bankruptcy Court as well. Under these circumstances the possible delay and additional expense caused by replacement are clearly outweighed by considerations of the integrity of the judicial process. We find therefore no abuse of discretion in Judge Parente's determination that Shaw & Levine be removed as special counsel in the state court action.
 
 
 13
 The appointment and authorization of attorneys to debtors in bankruptcy proceedings is provided for by Rule of Bankruptcy Procedure 215(a) which is made applicable to Chapter XI proceedings by Rule 11-22.[5] Rule 215(a) requires the disclosure of all the attorney's connections with the debtor, and a determination must be made by the court that the employment will be in the best interests of the debtor. Attorneys who are so appointed are of course officers of the court and fiduciaries. We have had occasion recently to discuss at some length their responsibilities to the estate of the debtor, the creditors and the court in In re Arlan's Department Stores, Inc., --- F.2d ---- Dkt. Nos. 79-5017, 79-5018 (2d Cir. Nov. 5, 1979).
 
 
 14
 We have a continuing concern that such appointments not be made in a perfunctory, pro forma manner without full consideration by the court of its obligation to determine that the employment is in the best interest of the debtor. We were advised on this appeal that the appointment of prior counsel as counsel to the debtor in Chapter XI proceedings is customary and usual. In fact Rule 215(a) specifically permits this practice. Obviously the familiarity of counsel with the business of the debtor and his relationship with its officers and directors is advantageous and not normally a cause of concern. However, it should also be apparent that the close business and personal relationships which have developed prior to insolvency may well create conflicts which preclude counsel from acting in the best interest of the debtor, particularly when questions involving the stewardship of those officers and directors arise. This is surely such a case. The financial debacle which engulfed Bohack is now alleged to have been created at least in part by machinations of its own board and officers. An attorney who has been closely related by professional, business and personal ties to those whose conduct may now be suspect is evidently in no position to make any objective appraisal of the nature and extent of their involvement. The appointment of Shaw & Levine to make the investigation and to determine whether the state action should be undertaken was inappropriate when made and the order of the Bankruptcy Court of May 23, 1978 terminating that representation was proper.
 
 
 15
 However, we do not agree that the creditors' committee, as was provided in the order, should recommend replacement counsel. Since the charges made are directed in part against the debtor's management, we agree that the debtor is not in a position to recommend counsel. See In re Mandell, 69 F.2d 830, 831 (2d Cir. 1934). However, the complaint also alleges that several of Bohack's trade creditors improperly tightened Bohack's credit at A&P's request, thus contributing to the financial disaster which overtook Bohack. Yet it does not appear that any creditors have been named defendants in the state court action. In fact the continued retention of Shaw & Levine was urged by the creditors before this court. Under these circumstances the bankruptcy judge should independently select an attorney who has had no previous ties with the debtor. Such independent counsel should make the investigation directed by the order of February 24, 1977 and report to the Bankruptcy Court as to whether the litigation is justified and whether it should be continued, broadened in scope, or terminated. Any application for fees by Shaw & Levine with respect to services rendered in the state proceedings should not be entertained until the Bankruptcy Court shall determine whether that action was properly commenced.[6]
 
 
 16
 Reversed and remanded.
 
 
 
 [1]
 The complaint in the state action commenced by Shaw & Levine on behalf of Bohack named the following as defendants: Gulf & Western, Inc.; Don Gaston, Martin Davis, and Lawrence Levinson, its directors; Charles G. Bluhdorn, a director of Gulf & Western and a controlling stockholder of Bohack; Roy T. Abbott, Jr., a former officer and director of Bohack; Joel Dolkart, a former director and general counsel of Bohack; Nicholas Salgo, a former director of Bohack; and Simpson, Thacher & Bartlett, general counsel for both Gulf & Western and Bohack. All except Dolkart and Abbott are appellants in this case
 
 
 [2]
 The basis for this part of the motion was the alleged unprofessional conduct of Shaw in other matters which appellants urged should have been disclosed to the court on his application for appointment as special counsel. Judge Parente's denial of the motion with respect to this issue is not raised on this appeal but was in effect annointed by the Bankruptcy
 
 
 [3]
 Despite the literal language of section 24(a), an interlocutory order in a "proceeding" is appealable only if it finally disposes of "some asserted right, and an order which is not 'a formal exercise of judicial power affecting the asserted rights of a party' " may not be appealed at that stage. Lesser v. Migden, supra, 328 F.2d at 48
 
 
 [4]
 Although the creditors' committee represents the interests of all creditors, its main function is to advise the creditors of their rights and the proper course of action in the bankruptcy proceeding. Bankruptcy Rule 11-19(a); Rule of Bankruptcy Procedure 209(b); see 2A Collier on Bankruptcy P 44.21(4), at 1685 (14th ed. 1975) (hereinafter "Collier's"). Moreover, the committee owes a fiduciary duty to the creditors, and must guide its actions so as to safeguard as much as possible the rights of minority as well as majority creditors. Woods v. City National Bank & Trust Co., 312 U.S. 262, 61 S.Ct. 493, 85 L.Ed. 820 (1941); 2A Collier's, supra, P 44.06, at 1653-54 and n.2
 
 
 [5]
 Rule 215(a) provides:
 (a) Conditions of Employment of Attorneys and Accountants. No attorney or accountant for the trustee or receiver shall be employed except upon order of the court. The order shall be made only upon application of the trustee or receiver, stating the specific facts showing the necessity for such employment, the name of the attorney or accountant, the reasons for his selection, the professional services he is to render, and to the best of the applicant's knowledge all of the attorney's or accountant's connections with the bankrupt, the creditors or any other party in interest, and their respective attorneys and accountants. If the attorney or accountant represents or holds no interest adverse to the estate in the matters upon which he is to be engaged, and his employment is in the best interest of the estate, the court may authorize his employment. Notwithstanding the foregoing sentence, the court may authorize the employment of an attorney or accountant who has been employed by the bankrupt when such employment is in the best interest of the estate. The employment of any attorney or accountant shall be only for the purposes specified in the order, but the court may authorize a general retainer of an attorney when necessity therefor is shown.
 Rule 11-22 provides:
 Employment of Attorneys and Accountants. Bankruptcy Rule 215 applies in Chapter 11 cases to the employment of attorneys and accountants for a trustee, receiver, debtor in possession, or creditors' committee selected pursuant to Rule 11-27.
 
 
 [6]
 After this appeal was argued and the opinion prepared but not yet filed, it was brought to our attention that Bankruptcy Judge Parente on November 30, 1979 on the motion of Shaw & Levine and without opposition authorized the debtor-in-possession to compromise the state court action subject to the entry of a final order of confirmation of the debtor's modified plan of arrangement. It is basic that once the notice of appeal was filed, neither the District Court nor the Bankruptcy Court had jurisdiction to entertain any motion with respect to the very issue Sub judice in this court. 16 Wright, Miller, Cooper & Grossman, Federal Practice and Procedure § 3949, at 358-59 (1977). We have determined that a conflict exists here and that the issues involve the integrity of the bankruptcy proceedings. The appearance of impropriety cannot be cured by any purported conditional settlement by the parties. The November 30, 1979 order of the Bankruptcy Court is hereby set aside as void