**In re GREYSTONE HOLDINGS, L.L.C., et al., Debtors and Debtors–in–Possession.**

Nos. 02–64605 to 02–64609.

United States Bankruptcy Court, N.D. Ohio, Eastern Division.

Aug. 21, 2003.

Shawn M. Riley, Susanne E. Dickerson, McDonald, Hopkins, Burke & Haber Co. LPA, Matthew A. Salerno, Cleveland, OH, Patrick W. Carothers, Pittsburgh, PA, for Debtors.

McNamara & Freeman Co., Uniontown, OH, for Trustee.

Maria Giannirakis, Office of the U.S. Trustee, Cleveland, OH, for U.S. Trustee.

Michael Kaminski, DKW Law Group, Pittsburgh, PA, for Creditor Committee.

## MEMORANDUM OPINION

RUSS KENDIG, Bankruptcy Judge.

### PROCEDURAL HISTORY

This matter is before the court on the application for order authorizing the Official Committee of Unsecured Creditors (hereafter "the Committee") to employ DKW Value Recovery, LLC (hereafter "DKW Value Recovery") as financial advisor to the Committee and the application of DKW Value Recovery for the allowance of interim compensation and reimbursement of expenses as financial advisor to the Committee for the period from November 5, 2002 through February 28, 2003. The United States Trustee (hereafter "the UST") filed an objection to the application to employ, to which the Committee replied on February 24, 2003. The Debtors and Debtors–in–Possession (hereafter "the Debtors") filed a response to the application for fees and expenses.

On February 25, 2003, a hearing was held on the application to employ DKW Value Recovery. Michael Kaminski ar-

gued on behalf of the Committee. Lenore Kleinman argued on behalf of the UST. The court took the matter under advisement and allowed the Committee until March 3, 2003 to file a supplemental memorandum in support. The UST was allowed until March 10, 2003 to file a supplemental memorandum in response. The Committee filed its support memorandum on March 24, 2003. Although the UST was given telephone approval to file its response by April 25, 2003, the UST failed to file a response memorandum.

The application for fees and expenses was to be heard on June 27, 2003. Upon receiving notice that an agreed order would be submitted resolving the Debtors' response, the hearing was cancelled.

## JURISDICTION

The court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(a), the general order of reference entered in this district on July 16, 1984, and 28 U.S.C. § 157(b)(1). The following constitute the court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

## FACTS AND ARGUMENTS

On September 27, 2002, Greystone Holdings, LLC, M & M Oil Company, Holmes Oil Company, Greystone Petroleum, LLC and Kettler Trucking, Inc. filed voluntary petitions for relief under Chapter 11 of the United States Bankruptcy Code. The cases were subsequently ordered to be jointly administered.

On October 9, 2002, the UST appointed the Committee in the within proceeding. On October 24, 2002, the Committee filed an application to employ DKW Law Group

PC (hereafter "DKW Law Group") as counsel to the Committee. Its retention was approved June 30, 2003 retroactive to October 21, 2002.

After meeting with the Debtors, the Committee determined that it needed to retain financial advisors to assist it in valuing the sales of assets, making financial projections, evaluating a plan of reorganization, and contemplating the continued operation of the Debtors' businesses. The Committee selected DKW Value Recovery as its financial advisor. DKW Value Recovery is a wholly-owned subsidiary of DKW Law Group, a fact that was disclosed to the Committee's members prior to their retention of DKW Value Recovery. The Committee requests that its retention of DKW Value Recovery be approved nunc pro tunc to November 5, 2002. DKW Value Recovery requests fees of $14,500.00 and expenses of $172.28 for the time period of November 5, 2002 through February 28, 2003.

The UST objects to the Committee's application to retain DKW Value Recovery as its financial advisor, contending that its retention would create a conflict of interest. The UST argues that because DKW Value Recovery is a wholly-owned subsidiary of DKW Law Group, the independence of both the Committee's counsel and its financial advisor would be compromised. The UST posits that DKW Law Group would not object to a questionable fee request of DKW Value Recovery. Further, the UST argues that even the appearance of a conflict is prohibited.

In response, the Committee argues that the UST's objection was untimely filed.[1] The Committee argues that because no

---

1. How late the UST's objection was filed is unclear as the Committee failed to file any notice and certificate of service with its application to employ. The application was signed on November 6, 2002 and filed on November 12, 2002. The UST's objection was filed January 21, 2003.

objections were timely filed, DKW Value Recovery performed substantial services, and it would be inequitable to deny its application to retain now. Further, it argues that the Bankruptcy Code does not prohibit DKW Value Recovery's retention. The Committee contends that DKW Value Recovery does not hold or represent any interest adverse to the estate or Debtors' unsecured creditors. It argues that its only interest adverse to the estate arises from its interest in the fees incurred in connection with its representation of the Committee. It argues that this interest cannot be a disqualifying factor as otherwise, it would be impossible to represent a debtor or a committee as a desire to be paid is always present on the behalf of a professional.

The Committee argues that DKW Value Recovery is a disinterested person as that term is defined in 11 U.S.C. § 101(14). The Committee argues that DKW Value Recovery has been retained by the Committee and so has a duty of loyalty to the Committee. The Committee asserts that no allegations have been raised that DKW Value Recovery has not performed its duties on behalf of the Committee nor have any allegations been raised that a duty to another client has been compromised by DKW Value Recovery or that the fees proposed to be charged by DKW Value Recovery are objectionable. The Committee insists that an actual, not a potential, conflict of interest leads to disqualification. The Committee argues that no conflict of interest exists between the interests of the Committee, DKW Law Group and DKW Value Recovery. Instead, the Committee argues, a unity of interests exists to represent the Committee's interests zealously. The Committee argues that if it directed DKW Law Group to object to the fees of DKW Value Recovery, DKW Law Group would have a professional responsibility to follow its di-

rective. If the Committee objected to a fee application of DKW Value Recovery, DKW Law Group would first attempt to reconcile the differences between the Committee and the financial advisor. If a reconciliation could not be achieved, the Committee argues that DKW Law Group would have to zealously represent the Committee's interest or withdraw from representation. Additionally, the Committee argues that DKW Value Recovery's fee applications would be subject to the review of the Debtors, the Debtors' counsel, the UST and the court.

The Debtors respond to the application for fees and expenses by stating that a final order authorizing secured postpetition financing on a superpriority basis pursuant to 11 U.S.C. § 364 and granting adequate protection to Comdata Network, Inc. was entered on October 29, 2002. In this order, a carveout of $100,000.00 was allowed for professional fees. If professional fees exceed that amount, they cannot be paid until the secured lender is paid in full. Accordingly, the Debtors propose that the fee application of DKW Law Group, then pending, be allowed in the amount of fifty percent of the fees and expenses requested and that the fee application of DKW Value Recovery be allowed in the amount of one hundred percent of the fees and expenses requested.

**DISCUSSION**

**I. Retention**

"A creditors' committee stands as a fiduciary to the class of creditors it represents." *In re Caldor, Inc.,* 193 B.R. 165, 169 (Bankr.S.D.N.Y.1996). Its purpose "'is to advise the creditors of their rights and the proper course of action in the bankruptcy proceedings.'" *Id.* (*quoting Bohack Corp. v. Gulf & Western Indus.,* 607 F.2d 258, 262 n. 4 (2nd Cir.1979)

(citations omitted)). Therefore, under 11 U.S.C. § 1103(c), a creditors' committee may:

(1) consult with the trustee or debtor in possession concerning the administration of the case;

(2) investigate the acts, conduct, assets, liabilities, and financial condition of the debtor, the operation of the debtor's business and the desirability of the continuance of such business, and any other matter relevant to the case or to the formulation of a plan;

(3) participate in the formulation of a plan, advise those represented by such committee of such committee's determinations as to any plan formulated, and collect and file with the court acceptances or rejections of a plan.

11 U.S.C. § 1103(c). To accomplish this, a committee may "select and authorize the employment . . . of one or more attorneys, accountants, or other agents, to represent or perform services for such committee." 11 U.S.C. § 1103(a). Therefore, the professionals that a committee retains owe a fiduciary duty to the committee. *Caldor,* 193 B.R. at 170 (*citing In re Arlan's Dept. Stores, Inc.,* 615 F.2d 925, 943–44 (2d Cir. 1979); *In re Mesta Mach. Co.,* 67 B.R. 151, 158 (Bankr.W.D.Pa.1986); *In re Oliver's Stores, Inc.,* 79 B.R. 588, 597 (Bankr. D.N.J.1987) ("the integrity of the bankruptcy system demands that the professionals serving the committee not place themselves in a situation where their independence, loyalty and integrity can be questioned by the unsecured creditor body whom they represent")). The professionals retained by the committee may seek compensation from the estate as an administrative expense. 11 U.S.C. § 503(b)(4).

██ While public policy does favor allowing parties to retain the professionals of their own choosing, *Caldor,* 193 B.R. at

170, limitations on the committee's right to retain professionals do exist. *Id.*

An attorney or accountant employed to represent a committee appointed under section 1102 of this title may not, while employed by such committee, represent any other entity having an *adverse interest* in connection with the case. Representation of one or more creditors of the same class as represented by the committee shall not per se constitute the representation of an adverse interest.

11 U.S.C. § 1103(b) (emphasis added). Likewise, under 11 U.S.C. § 328(c), the compensation requested by a professional person retained under § 1103 will be disallowed, if during employment, that professional is not disinterested or holds an interest adverse to the interest of the estate with regard to the matter on which the professional is employed. 11 U.S.C. § 328(c). "The statutory requirements of 'disinterestedness' and no interest 'adverse to the estate' 'serve the important policy of ensuring that all professionals . . . tender undivided loyalty and provide untainted advice and assistance in furtherance of their fiduciary responsibilities.'" *Kravit, Gass & Weber, S.C. v. Michel (In re Crivello),* 134 F.3d 831, 836 (7th Cir.1998) (*quoting Rome v. Braunstein,* 19 F.3d 54, 58 (1st Cir.1994)).

## A. Disinterested

██ "Disinterested person" is defined in the Bankruptcy Code as one who "does not have an interest materially adverse to the interest of the estate or of any class of creditors . . . by reason of any direct or indirect relationship to, connection with, or interest in, the debtor . . . . *or for any other reason.*" 11 U.S.C. § 101(14)(E) (emphasis added). "The latter portion of the definition, which is referred to as the 'catch-all clause,' is sufficiently broad to include any professional with an 'interest or relationship that would even faintly col-

or the independence and impartial attitude required by the Code.' " *Crivello,* 134 F.3d at 835 (7th Cir.1998) (*quoting In re BH & P Inc.,* 949 F.2d 1300, 1308 (3rd Cir.1991) (citations omitted)). "The definition of disinterestedness in the Code covers not only actual impropriety, but the appearance of impropriety as well." *In re Paolino,* 80 B.R. 341, 345 (Bankr.E.D.Pa.1987).

## B. Adverse interest

■ "Adverse interest" is not defined in the Bankruptcy Code, *Caldor,* 193 B.R. at 171, but the oft-cited definition of adverse interest is:

> (1) to possess ... an economic interest that would tend to lessen the value of the bankruptcy estate or that would create either an actual or potential dispute in which the estate is a rival claimant; or (2) to possess a predisposition under circumstances that render such a bias against the estate.

*In re Fretter,* 219 B.R. 769, 777 (Bankr. N.D.Ohio 1998) (*quoting In re Roberts,* 46 B.R. 815, 826–27 (Bankr.D.Utah 1985), *rev'd in part on other grounds,* 75 B.R. 402 (D.Utah 1987)). " '[I]nterests are not considered "adverse" merely because it is possible to conceive a set of circumstances under which they might clash.' " *Caldor,* 193 B.R. at 172 (*quoting In re Leslie Fay Co., Inc.,* 175 B.R. 525, 532 (Bankr. S.D.N.Y.1994)); *In re Martin,* 817 F.2d 175, 183 (1st Cir.1987) ("[H]orrible imaginings alone cannot be allowed to carry the day. Not every conceivable conflict must result in sending counsel away to lick his wounds."); *In re Kelton Motors, Inc.,* 109 B.R. 641, 650 (Bankr.D.Vt.1989) ("mere hypothetical conflicts do not meet the heavy burden of proof to warrant disquali-

fication of DIP's attorney") (citation omitted).

## C. Analysis

■ The barriers to the Committee's retention of DKW Value Recovery in this case are whether it is disinterested and whether it holds an economic interest that would lessen the value of the bankruptcy estate. The UST argues that the fact that DKW Value Recovery is a wholly-owned subsidiary of DKW Law Group creates a conflict of interest and hampers the ability of both DKW Law Group and DKW Value Recovery to objectively represent the Committee. The UST questions whether DKW Law Group will have a financial disincentive to object to the fee applications of DKW Value Recovery because of the business relationship between the two. This is a unique situation and one on which the court could not find a case on point.[2]

■ One court theorized that to determine whether a disqualifying conflict existed, the court had to determine whether the representation created " 'either a meaningful incentive to act contrary to the best interest of the [committee]—an incentive sufficient to place those parties at more than acceptable risk—or the reasonable perception of one.' " *Caldor,* 193 B.R. at 171 (*quoting In re Martin,* 817 F.2d at 180). Said another way, " 'if it is plausible that the representation of [the committee] will cause [the professionals] to act any differently than they would without that ... representation, then they have a conflict and an interest adverse to the [committee].' " *Id.* (*quoting Leslie Fay Co.,* 175 B.R. at 533).

The relationship between DKW Law Group and DKW Value Recovery creates a disqualifying conflict. First, DKW Value

**2.** The Committee also noted its inability to locate a case on point in its support memo- randum.

Recovery is not a disinterested person under the catchall provision of § 101(14)(E). DKW Value Recovery has an interest materially adverse to the estate by reason of its relationship to DKW Law Group. By virtue of their financial arrangement and shared financial goals, DKW Law Group could not be objective in its review of DKW Value Recovery's fee applications. Their relationship also creates an interest adverse to the estate because DKW Value Recovery's fees are paid out of estate money.

In a case cited by the committee, *Harold & Williams Development Co. v. United States Trustee (In re Harold & Williams Development Co.)*, 977 F.2d 906 (4th Cir. 1992), which is not on point but is somewhat instructive, the court refused to adopt a per se rule of prohibiting dual representation by a person acting as a lawyer and an accountant for a debtor-in-possession. *Id.* at 908. The court found that an approval or denial of such retention should be within the bankruptcy court's discretion. *Id.* In this case, the conflict arose because of the inherent conflict between an accountant's duty to disclose and an attorney's role to protect the confidences of a client. *Id.* In analyzing the situation, the court stated that "the court ... must not abdicate the equitable discretion granted to it by establishing rules of broad application which fail to take into account the facts of a particular case and the overall objectives of the bankruptcy system." *Id.* at 910 (*citing In re Martin*, 817 F.2d 175, 182 (1st Cir.1987)). While "an accountant intended to provide auditing services and render an objective and independent opinion on the financial records of the business, ... could not, in his dual role as the debtor's attorney (and, thus, potential advocate) fulfill any responsibility to question the opinion," an accountant's duties that are limited to bookkeeping to prepare documents for the bankruptcy filing could allow for the dual appointment of a person as attorney and accountant. *Id.* at 911.

> In considering the approval of dual appointments, a bankruptcy court should satisfy itself that the foreseeable legal and accounting tasks present no inherent conflict or potential breach of confidence. The court should then weigh, against the risks of any *potential* difficulties, the potential advantages to the bankruptcy estate of a dual appointment, such as savings of time and money spent on estate administration.

*Id.* (emphasis in original).

■ The instruction provided by this case is that the facts of the case and the scope of the person's dual duties as attorney and accountant allayed the court's concerns about the potential conflict. There were safeguards inherent in the limit of the scope of the duties. In the case at hand, counsel for the Committee owns the financial advisor for the Committee. While no actual conflict has arisen, the overlap, connection, and control between DKW Law Group and DKW Value Recovery means that the potential for conflict is there and it is great. Like the *Harold & Williams Development Co.* court, this court refuses to adopt a per se rule against prohibiting the retention of a professional which is the wholly-owned subsidiary of another professional previously retained or proposed to be retained in the case. However, where inappropriate safeguards exist to alleviate the conflict, or if there is any material concern, the retention will not be allowed.

## II. Allowance of fees and reimbursement of expenses

■ A professional person employed under § 1103 can be awarded compensation pursuant to 11 U.S.C. § 330. 11

U.S.C. § 330. The court's refusal to allow the retention of DKW Value Recovery as the Committee's financial advisor based on its lack of disinterestedness and its adverse interest to the estate would seem to bar DKW Value Recovery's application for fees and reimbursement of expenses under 11 U.S.C. § 328, which provides that

> the court may deny allowance of compensation for services and reimbursement of expenses of a professional person employed under section ... 1103 ... if, at any time during such professional person's employment under section ... 1103 ..., such professional person is *not a disinterested person, or represents or holds an interest adverse to the interest of the estate with respect to the matter on which such professional person is employed.*

11 U.S.C. § 328(c) (emphasis added). As the Sixth Circuit Court of Appeals reasoned in *Michel v. Federated Dept. Stores, Inc. (In re Federated Dept. Stores, Inc.),* 44 F.3d 1310 (6th Cir.1995), "the plain language of § 328(c) limits the bankruptcy court's discretion to grant or deny compensation to 'a professional person employed under [§ 1103(b) ].' " [3] *Id.* at 1320 (citation omitted). If a professional person is "an interested person from the very outset, it [is] never 'a professional person employed' under that section." *Id.*

> To allow a court to, in essence approve employment as an officer of the court retrospectively by allowing payment for services rendered during a conflict pursuant to § 328(c), when the same may not do so prospectively, pursuant to § [1103(b) ], is illogical, does not give

effect to § [1103(b) ], and gives little respect to the Bankruptcy Code.

*In re EWC, Inc.,* 138 B.R. 276, 282–83 (Bankr.W.D.Okla.1992).

Despite its holding in *Federated Dept. Stores, Inc.* that "a valid appointment under § [1103(b) ] is a condition precedent to the decision to grant or deny compensation under § 330(a) or § 328(c)," the Sixth Circuit Court of Appeals allowed a portion of compensation requested by the petitioning professional on an equitable basis, finding that the professional had rendered valuable services during a reorganization. *Federated Dept. Stores, Inc.,* 44 F.3d at 1320. Over the objection of the United States Trustee, the professional had been retained and the reorganization completed by the time the case wound its way through the appellate process. *Id.* In the interim, the Sixth Circuit Court of Appeals issued a decision in *In re Middleton Arms Ltd. Partnership,* 934 F.2d 723 (6th Cir. 1991), which was dispositive of the issue in the case. *Id.* at 1319. The *Federated Dept. Stores, Inc.* court noted that "peculiar and unique circumstances, which· are not likely to be repeated again" and fairness and equity dictated that compensation be allowed up and until the point at which its *Middleton Arms* decision was issued. *Id.* at 1320.

In the case at bar, the court does not doubt that DKW Value Recovery performed services of value to the Committee and ultimately to the estate. And DKW Value Recovery's argument that it performed work in reliance on no timely objections holds merit. Given the novelty of the issue in this case, and the late-filed objection of the UST, the court finds that

---

**3.** The *Federated Dept. Stores, Inc.* court referenced 11 U.S.C. § 327(a) in its decision, which authorizes the employment of professional persons by a trustee, or by extension, a debtor-in-possession. This section of the Bankruptcy Code also requires that professional persons retained by a trustee be disinterested and not hold or represent an interest adverse to the estate. 11 U.S.C. § 327(a).

unique circumstances exist, similar to that in *Federated Dept. Stores, Inc.,* that warrant an allowance of compensation and reimbursement of expenses to DKW Value Recovery. Accordingly, DKW Value Recovery will be allowed the compensation and reimbursement of expenses it has requested.

## CONCLUSION

An order in accordance with this memorandum decision shall enter forthwith.

## ORDER

This matter came before the court on the application for order authorizing the Official Committee of Unsecured Creditors to employ DKW Value Recovery, LLC (hereafter "DKW Value Recovery") as financial advisor to the committee (hereafter "the Committee") and the application of DKW Value Recovery for the allowance of interim compensation and reimbursement of expenses as financial advisor to the Committee for the period from November 5, 2002 through February 28, 2003. The United States Trustee (hereafter "the UST") filed an objection to the application to employ, and the debtors and debtors-in-possession (hereafter "the Debtors") filed a response to the application for fees and expenses.

For the reasons stated in the foregoing memorandum opinion, the UST's objection to the Committee's application to employ is hereby **SUSTAINED**, and the Committee's application is hereby **DISAL-LOWED**. The Debtors' objection to DKW Value Recovery's application for interim compensation and expenses is hereby **SUSTAINED**. DKW Value Recovery is hereby **ALLOWED** interim compensation of $14,500.00 and expenses of $172.28

for the time period of November 5, 2002 through January 21, 2003.

It is so ordered.